**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

**ROGER L.,**

      **Plaintiff,**

**v.**                                  **Case No.: 1:24-cv-00005**

**MARTIN J. O'MALLEY,
Commissioner of the
Social Security Administration,**

      **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

This action seeks a review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable David A. Faber, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Plaintiff's Motion for Judgment on the Pleadings with Memorandum in Support, (ECF Nos. 8, 9), and the Commissioner's Brief in Support of Defendant's Decision, seeking judgment in his favor, (ECF No. 10).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's motion be

**GRANTED** to the extent that it requests remand of the Commissioner's decision, (ECF No. 8); the Commissioner's motion for judgment on the pleadings be **DENIED**, (ECF No. 10); the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and this case be **DISMISSED**, **with prejudice,** and removed from the docket of the Court.

## I.      Procedural History

In May 2016, Roger L. ("Claimant") filed an application for DIB, alleging a disability onset date of January 21, 2016, due to "right hand injury, left elbow injury, left ankle joint fused, psoriatic arthritis, and fatty liver disease." (Tr. 206-10, 228-29). Claimant ultimately filed an action for judicial review of the Commissioner's decision under 42 U.S.C. § 405(g), and this Court remanded the matter to the Commissioner for further proceedings in consideration of Claimant's mental impairments. (Tr. 925-59). Two additional hearings were held before an Administrative Law Judge, Thomas W. Erwin (the "ALJ"), on February 17, 2021, and June 16, 2021. (Tr. at 837-81). On July 26, 2021, the ALJ issued an unfavorable decision, finding that Claimant was not disabled. (Tr. at 804-36). The Appeals Council denied Claimant's request for review, which made the decision of the ALJ the final decision of the Commissioner. (Tr. 787-92).

Claimant timely filed the present civil action, seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 5). Claimant filed a Motion for Judgment on the Pleadings and Memorandum in Support, (ECF Nos. 8, 9), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 10). The time period within which Claimant could file a reply expired. Thus, the matter is fully briefed and ready for resolution.

## II.     Claimant's Background

Claimant was 35 years old on his alleged disability onset date and 40 years old on

the date of the ALJ's decision. (Tr. at 826). He completed high school; communicates in

English; and previously worked as a handy man and line/crew leader. (Tr. at 227, 229-

30).

## III.     Summary of the ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden

of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A

disability is defined as the "inability to engage in any substantial gainful activity by

reason of any medically determinable impairment which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation

process for the adjudication of disability claims. If an individual is found "not disabled"

at any step of the process, further inquiry is unnecessary, and benefits are denied. 20

C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is

currently engaged in substantial gainful employment. *Id*. § 404.1520(b). If the claimant

is not, then the second step requires a determination of whether the claimant suffers

from a severe impairment. *Id*. § 404.1520(c). If severe impairment is present, the third

inquiry is whether this impairment meets or equals any of the impairments listed in

Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"), found

at 20 C.F.R § Pt. 404, Subpt. P, App. 1. *Id*. § 404.1520(d). If the impairment does, then

the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the

adjudicator must determine the claimant's residual functional capacity ("RFC"), which

is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger,* 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents such findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ

4

determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a mental disorder described in the Listing. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 404.1520a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status requirements for DIB through December 31, 2021. (Tr. at 809, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since his alleged onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following

severe impairments: left ankle fusion with arthritis, residuals of right wrist and left elbow fractures with post-traumatic arthritis, psoriatic arthritis and plaque psoriasis, lumbago, obesity, history of diabetes, gastritis, vasculitis, depression, and anxiety. (Tr. at 810, Finding No. 3).

Under the third inquiry, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 810-13, Finding No. 4). Accordingly, the ALJ found that Claimant possessed:

> [T]he residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can never use left foot controls. He must avoid all hazards, unprotected heights, kneeling, or crawling. The claimant can occasionally climb ramps and stairs, balance, stoop, and crouch. He can frequently handle and finger. The claimant sometimes requires a cane for ambulation, but it is not required for all ambulation. Instructions and tasks are limited to those that can be learned in thirty days or less, and he can tolerate occasional decision-making and changes in the work setting.

(Tr. at 814-25, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could not perform his past relevant work. (Tr. at 826, Finding No. 6). Therefore, the ALJ reviewed Claimant's prior work experience, age, and education in combination with his RFC to determine his ability to engage in other substantial gainful activity. (Tr. at 826-27, Findings 7 through 10). The ALJ considered that (1) Claimant was defined as a younger individual age 18 to 44 on the alleged disability onset date, and he was 40 years old at the time of the decision; (2) Claimant had at least a high school education; and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that Claimant was "not disabled," regardless of his transferable job skills. (Tr. at 826, Findings 7 through 9). Taking into account these factors, Claimant's RFC, and the

testimony of a vocational expert ("VE"), the ALJ determined that Claimant could perform other jobs that existed in significant numbers in the national economy, including unskilled, sedentary exertional work as a final assembler, DOT 731.685-014; call-in operator, DOT 237.367-014; or telephone intervention clerk, DOT 237.367-046. (Tr. at 826-27, Finding No. 10). Thus, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 827, Finding No. 11).

## IV.   Claimant's Challenges to the Commissioner's Decision

Claimant argues that the ALJ did not properly consider his orthopedist and mental health therapist's medical opinions under the "treating source" rule. (ECF No. 9). In addition, Claimant contends that the ALJ did not provide an accurate and logical bridge between the evidence and his RFC findings, particularly as it relates to Claimant's ability to frequently handle and finger and otherwise use his hands in a sedentary environment. (*Id.*). The Commissioner asserts, in response, that substantial evidence supports the ALJ's evaluation of the medical opinions, as well as his RFC findings. (ECF No. 10).

## V.   Relevant Medical History

The undersigned reviewed all of the evidence before the Court. The evidence that is most relevant to the instant matter is briefly summarized as follows.

### A. Treatment Records

On January 21, 2016, Claimant presented to orthopedist Nick L. Zervos, M.D., who recorded that Claimant suffered a "pretty significant accident playing basketball a couple of years ago" in which he broke his left elbow and underwent surgery on his left elbow and wrist. (Tr. at 469). Soon after, Claimant started complaining of increased pain

and difficulty using his left ankle. (*Id.*). Cortisone injections provided some relief, but further testing showed possible subtalar arthrosis. (*Id.*). Dr. Zervos performed a subtalar diagnostic arthroscopy. (*Id.*). Claimant continued to complain of pain and demonstrate very restricted range of motion in his ankle. *See, e.g.,* (Tr. at 636, 655, 657, 1332). Claimant was also treated for depression and anxiety by his primary care provider and received ongoing counseling from Michael Anderson, LCSW, during the relevant period. *See, e.g.,* (Tr. 1292, 1298, 1301, 1307, 1311, 1314, 1317, 1388, 1391).

### B. Opinions, Evaluations, and Prior Administrative Findings

On July 19, 2017, Dr. Zervos completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) form. (ECF No. 637-42). He opined that Claimant could occasionally lift and carry up to 10 pounds, but he could never lift or carry more than that amount. (Tr. at 637). Among other restrictions, the ALJ found that Claimant could stand for up to one hour without interruption for a total of one hour in a workday; walk for up to one hour without interruption for a total of one hour in a workday; and sit for four hours at one time for no more than four hours total in a workday. (Tr. at 638-41). Claimant can handle, finger, and feel continuously with both hands. (Tr. at 641).

On February 16, 2021, Mr. Anderson completed a Mental RFC Assessment form. He noted that he treated Claimant since August 1, 2019, on a monthly basis. (Tr. at 1474). Mr. Anderson assessed that Claimant had marked understanding and memory limitations, moderate and marked sustained concentration and persistence limitations, moderate social limitations, and mild to marked adaption limitations. (Tr. at 1475-77).

### VI.   Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial

evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In Blalock v.

Richardson, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th

Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct

a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson*

*v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589

(4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed

applicable Regulations and Rulings in reaching his or her decision, and that the decision

is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence

exists, the Court must affirm the Commissioner's decision "even should the court

disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.   Discussion

Claimant's challenges concern the ALJ's RFC assessment, which is the "ability to

do sustained work-related physical and mental activities in a work setting on a regular

and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the

**most** that a claimant can do despite his or her limitations resulting from both severe

and non-severe impairments, and the finding is used at steps four and five of the

sequential evaluation to determine whether a claimant can still do past relevant work

and, if not, whether there is other work that the claimant is capable of performing. *Id*.

According to the Ruling, the ALJ's RFC determination requires "a function-by-function

assessment based upon all of the relevant evidence of an individual's ability to do work-

related activities." *Id.* at *3.

The functions which the ALJ must assess include a claimant's physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); mental abilities, such as understanding, remembering, and carrying out instructions and responding appropriately to supervision, coworkers, and work pressures in a work setting; and other abilities, such as seeing and hearing. 20 CFR § 404.1545(b)-(d).

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7.

While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's

capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

### A. Medical Opinions

Claimant argues that the ALJ did not provide "good" and "specific" reasons for not affording controlling weight to the medical opinions of Claimant's treating sources, Dr. Zervos and Mr. Anderson, and instead giving them only "little weight." (ECF No. 9 at 6). The long eliminated "treating source rule" governs Claimant's application because it was filed in 2016.[1] Under the applicable law, the ALJ was required to consider the medical opinions along with the other evidence in the record. 20 C.F.R. § 404.1527(b). Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite [his] impairment(s), and [his] physical or mental restrictions." *Id.* § 404.1527(a)(2). In general, the ALJ should allocate more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Even greater weight should be given to the opinion of a treating source because that physician is usually most able to provide a detailed, longitudinal picture of a claimant's alleged disability. *Id.* § 404.1527(c)(2). Indeed, an ALJ is required to give a treating source's opinion **controlling** weight when the opinion is well supported by

---

[1] The special deference afforded to treating sources was eliminated for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c; *Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p*, 2017 WL 3928298 (S.S.A. Mar. 27, 2017).

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *Id.*

As especially important here, if the ALJ does not give the treating source's opinion controlling weight, the ALJ is required to analyze and weigh all the medical opinions of record, taking into account certain factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). Those factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors bearing on the weight of the opinion. *Id.* The ALJ must explain the reasons for the weight given to the opinions. "Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected … In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4. Nevertheless, in appropriate circumstances, a treating physician's opinion may be rejected in whole or in part in favor of a conflicting opinion by a non-treating source; for example, when the non-treating source's opinion is well-supported by evidence and explanation, is more consistent with the record as a whole, and is offered by a source with specialization in the subject matter of the opinion. *See Brown v. Commissioner of Soc. Sec.,* 873 F.3d 251, 268 (4th Cir. 2017). Ultimately, it is the responsibility of the ALJ, not the court, to evaluate the case, make findings of fact, weigh opinions, and resolve conflicts of evidence. *Hays*, 907 F.2d at 1456.

Although 20 C.F.R. § 404.1527(c) provides that in the absence of a controlling

opinion by a treating source, all of the medical opinions must be evaluated and weighed based upon various factors, the regulations do not explicitly require the ALJ to recount the details of that analysis in the written opinion. Instead, the regulations mandate only that the ALJ give "good reasons" in the decision for the weight ultimately allocated to medical source opinions. *Id.* § 404.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188, at *5 ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). "[W]hile the ALJ also has a duty to 'consider' each of the ... factors listed above, that does not mean that the ALJ has a duty to discuss them when giving 'good reasons.' Stated differently, the regulations require the ALJ to consider the ... factors, but do not demand that the ALJ explicitly discuss each of the factors." *Hardy v. Colvin,* No. 2:13–cv–20749, 2014 WL 4929464, at *2 (S.D.W. Va. Sept. 30, 2014).

Medical source statements on issues reserved to the Commissioner are treated differently than other medical source opinions. SSR 96-5p, 1996 WL 374183. In both the regulations and SSR 96-5p, the SSA explains that "some issues are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability," including the following:

> 1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
>
> 2. What an individual's RFC is;
>
> 3. Whether an individual's RFC prevents him or her from doing past relevant work;

4. How the vocational factors of age, education, and work experience apply; and

5. Whether an individual is "disabled" under the Act.

*Id.* at *2. "The regulations provide that the final responsibility for deciding issues such as these is reserved to the Commissioner." *Id.* Consequently, a medical source statement on an issue reserved to the Commissioner is never entitled to controlling weight or special significance, because "giving controlling weight to such opinions would, in effect, confer upon the [medical] source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine when an individual is disabled." *Id.* at *2. Still, these opinions must always be carefully considered, "must never be ignored," and should be assessed for their supportability and consistency with the record as a whole. *Id.* at *3.

### 1.  Dr. Zervos's Opinions

Claimant asserts that the ALJ's analysis of Dr. Zervos's opinions was woefully deficient because the ALJ did not explain (1) which objective evidence was inconsistent with Dr. Zervos's opinions and (2) which portions of Dr. Zervos's opinions that the ALJ found reliable and which he did not. (ECF No. 9 at 6-7). In particular, Claimant points to Dr. Zervos's opinion that Claimant can only sit for four hours in one workday, which is seemingly inconsistent with the requirements of sitting for six hours in a sedentary job. (*Id.* at 6).

The ALJ considered Dr. Zervos's Medical Source Statement. (Tr. at 825). He afforded the opinion "some weight as far as it [was] consistent with sedentary work," but he concluded that the evidence did "not support the need for additional sitting, standing,

or walking limitations for the reasons detailed" earlier in the decision. (*Id.*). Unfortunately, this conclusory explanation was inadequate to explain the weight that the ALJ assigned to Dr. Zervos's opinion. Although the ALJ earlier summarized the medical evidence, including some of Claimant's treatment with Dr. Zervos, he did not connect any of that evidence to his RFC analysis, particularly concerning his consideration of Dr. Zervos's opinion. There is no articulation of which evidence that the ALJ found to be in conflict with Dr. Zervos's findings. The RFC assessment is missing the most critical component: the ALJ's logical explanation. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22, 2019) ("[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two. Indeed, our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion."). Without any analysis connecting evidence to the ALJ's conclusion, the Court cannot discern whether the decision is supported by substantial evidence.

Furthermore, even if the ALJ properly declined to give controlling weight to Dr. Zervos's opinion, the ALJ did not proceed to consider the regulatory factors in weighing the opinion as required by SSR 96-2p, 1996 WL 374188, at *4; 20 C.F.R. § 404.1527(c)(2)-(6); and *Dowling*, 986 F.3d 377, 384–86. The ALJ mentioned that Dr. Zervos was Claimant's orthopedist, which perhaps showed the ALJ's consideration of the provider's medical specialty. However, the ALJ did not indicate how that factor affected the weight that he assigned to the opinion. Moreover, the ALJ did not articulate any consideration of Claimant's treatment relationship with Dr. Zervos, the frequency of evaluation, nature and extent of the treatment relationship, the extent to which Dr.

Zervos presented evidence to support his opinion, whether Dr. Zervos was opining on issues within his area of specialization, or any other factors that supported or contradicted the opinion. This was precisely the narrow analysis that the Fourth Circuit has cautioned against.

Certainly, the ALJ was not required to explicitly discuss each factor in his decision. *Siders v. Comm'r of Soc. Sec. Admin.*, No. 21-2329, 2023 WL 4488259, at *2 (4th Cir. July 12, 2023) (citing *Dowling*, 986 F.3d at 385). However, it must nonetheless be apparent from the decision that the ALJ meaningfully considered each of the factors before deciding how much weight to give the opinion. *Id.* "Mere acknowledgement of the regulation's existence is insufficient and falls short of the ALJ's duties." *Id.* (quoting *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 354 (4th Cir. 2023)). The ALJ shall give adequate attention to each factor and must include a narrative discussion describing how the evidence supports the ALJ's explanation of the varying degrees of weight that the ALJ gave to differing opinions concerning the claimant's conditions and limitations. *Id.* (citations and markings omitted).

Overall, the ALJ's failure to sufficiently explain his analysis of Dr. Zervos's opinion is critical in this case because the limitations that Dr. Zervos assessed would preclude the jobs that the ALJ found that Claimant could perform. As Claimant noted, Dr. Zervos opined that Claimant could only sit for a total of four hours in one workday, but the ALJ did not include that limitation. The VE explicitly testified that the jobs that he identified, and thus which the ALJ ultimately relied upon in finding Claimant not disabled, required a person to sit for six hours per workday. (Tr. at 879). The VE explained that a person who could not sit for six hours in a workday could not perform those jobs. (*Id.*). Indeed, most sedentary jobs require sitting for six hours in a workday.

16

(*Id.*). Claimant's ability to sit was clearly a key functional ability for which there was conflicting evidence, yet the ALJ failed to meaningfully address it in the disability decision.

The Fourth Circuit has been clear that the ALJ did not have free reign to attach whatever weight he or she saw fit, and it must be apparent from the decision that the ALJ considered each of the regulatory factors in order to discount a medical opinion from a treating physician. *Dowling*, 986 F.3d 385. Therefore, the undersigned **FINDS** that the ALJ's evaluation of the opinion evidence is not supported by substantial evidence and the matter should be remanded for the ALJ to reconsider or elaborate upon his analysis of Dr. Zervos's opinion and Claimant's physical functional abilities.

### 2. Mr. Anderson's Opinion

Claimant asserts a similar challenge regarding the ALJ's consideration of Mr. Anderson's opinion. The ALJ noted that Mr. Anderson, Claimant's therapist, stated in a letter dated January 19, 2021, that Claimant continued to seek counseling and was not able to work due to his medical conditions and his mental health. (Tr. at 824). The ALJ found that Mr. Anderson's statement as to the ultimate issue of disability was not a medical opinion of a treating physician within the meaning of the regulation, but that it was rather an opinion on an issue reserved to the Commissioner as to an administrative finding which is dispositive of a case. (*Id.*).

The ALJ further considered Mr. Anderson's medical source statement dated February 16, 2021, noting that Mr. Anderson opined that Claimant had marked limitations in understanding and memory, moderate to marked limitations in sustaining concentration and persistence, moderate limitations in social interactions, and mild to marked limitations in adaptation. (*Id.*). Mr. Anderson also opined the claimant would

be absent from work five to six days a month. (*Id.*). The ALJ concluded that "[a]s to the marked limitations [...] Mr. Anderson noted the claimant appeared depressed and anxious, but otherwise indicated [that] a mental status examination was unrevealing. No deficits were noted in social functioning." (*Id.*) (citations omitted). In continuation, the ALJ explained that "while reporting increased depression or anxiety at times, the claimant generally reported improvement with medication management, stating most recently his medications were working well." (*Id.*) (citations omitted). For those reasons, the ALJ gave Mr. Anderson's opinion little weight. (*Id.*).

Unlike his analysis of Dr. Zervos's opinion, the ALJ explained some of his findings regarding Mr. Anderson's opinion. However, the analysis focuses exclusively on the opinion that Claimant cannot work and has marked functional limitations. The ALJ did not address Mr. Anderson's opinions regarding Claimant's moderate social or adaptation limitations. The fact that the marked limitations were not supported by the record does not explain how the ALJ weighed Mr. Anderson's opinion that Claimant experienced moderate limitation in social interaction and mild to marked (which would include moderate) limitation in adaptation. Furthermore, like Dr. Zervos's opinion, the ALJ did not indicate that he properly considered the regulatory factors upon not assigning controlling weight to Mr. Anderson's opinion. 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."). There is simply insufficient information in the decision to determine whether the ALJ's evaluation of Mr. Anderson's opinion is supported by substantial evidence. Therefore, the undersigned **FINDS** that the matter should

additionally be remanded for the ALJ to reconsider or elaborate upon his analysis of Mr. Anderson's opinion and Claimant's mental functional abilities.

### B. Manipulative Limitations

In his final assignment of error, Claimant contends that there is no real discussion or citation to the record in the ALJ's decision to reasonably conclude that Claimant has the RFC to frequently handle and finger. Claimant argues that the ALJ ignored pieces of evidence that indicated that he cannot frequently handle and finger. He also disputes the ALJ's reliance on Dr. Zervos's opinion because Dr. Zervos never treated Claimant for an upper extremity injury and limited his medical source statement to Claimant's lower extremities. (ECF No. 9 at 8-9). This argument is misplaced, as Dr. Zervos expressly concluded that Claimant could bilaterally handle, finger, and feel continuously. (Tr. at 641). The notation regarding "lower extremities" simply referred to Dr. Zervos's medical specialty. (Tr. at 642). The form included a signature line and asked for Dr. Zervos's printed name, title, and medical specialty. (*Id.*). He listed "Nick Zervos, Orthopedic – lower extremi[t]ies." (*Id.*). Dr. Zervos did not limit his opinion to Claimant's lower extremity functional abilities.

In any event, because remand will result in the ALJ reconsidering the evidence, including Dr. Zervos's opinion, and issuing a new RFC finding and decision, this challenge is moot. Therefore, this issue shall be considered on remand as well.

### VIII. <u>Recommendations for Disposition</u>

For the above reasons, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's motion to the extent that it requests remand of the Commissioner's decision, (ECF No.

8); **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 10); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Faber, and Magistrate Judge Reeder.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:    November 6, 2024**



Joseph K. Reeder
United States Magistrate Judge

20